IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BRYAN THOMAS BLEVINS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:10-CV-005 |
| | § | |
| RICK THALER, | § | |
| Director, Texas Dep't of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION TO**
**DISMISS PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner BRYAN THOMAS BLEVINS has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 31st Judicial District of Wheeler County, Texas, for the offense of aggravated sexual assault of a child and the resultant sentence of life in prison. For the reasons hereinafter expressed, the United States Magistrate Judge is of the opinion petitioner's application should be DENIED

I.
FACTUAL AND PROCEDURAL BACKGROUND

In April 2005, petitioner was placed on deferred adjudication community supervision for sexual assault of a child. (Reporter's Record [hereinafter RR], vol. 4, State's Exhibit 6). As part of his community supervision, petitioner was prohibited from having unsupervised contact with children under the age of seventeen, including his own children. (*Id.*). At the time, petitioner was father to three children—a three-year old daughter, a seven-month old son, and a five-year old step-daughter. (RR, vol. 3, State's Exhibit 8). Despite the court order, petitioner and his then-wife arranged for petitioner to visit

the children. (*Id.*, pg. 126). In August 2005, Michelle Blevins, who was at that time petitioner's wife, took the children to meet with petitioner at his mother's house, where he was living at the time. (*Id.*. 113).

The indictment issued against petitioner in November 2005, along with the testimony offered at his jury trial in June 2008, alleged petitioner sexually assaulted his five-year-old step-daughter during the August 2005 visit. (*Id.*, vol. 4, pg. 34; Clerk's Record [hereinafter CR], pg. 2). A jury found petitioner guilty, and the trial court sentenced him to serve life in prison. (RR, vol. 4, pg. 81; vol. 5, pg. 4). Petitioner's conviction was affirmed on direct appeal. *Blevins v. State*, No. 07-088-336-CR, 2009 WL 1148748 (Tex. App.—Apr. 29, 2009). Petitioner did not seek a petition for discretionary review following denial of the appeal. In June 2009, however, petitioner filed a state application for habeas corpus relief. *In re Blevins*, WR-72,197-02. The state application was denied without written order in September 2009. *Id.* The instant federal habeas corpus petition followed.

## II.
## PETITIONER'S ALLEGATIONS

Petitioner contends he is in custody in violation of the United States Constitution and the laws of the United States for the following reasons:

1. Petitioner's confession, admitted against him at trial, was coerced and fabricated.

2. Petitioner received ineffective assistance of counsel because his attorney failed to call favorable witnesses.

3. Petitioner knew two members of the jury, who lied during voir dire about whether they knew the petitioner

4. There was no evidence or DNA linking petitioner to the crime.

5. The victim had previously lied about being sexually assaulted.

III.
STANDARD OF REVIEW

Petitioner may not obtain habeas corpus relief in this Court with respect to any claim adjudicated on the merits in the state court proceedings unless the adjudication of the claim resulted in a decision contrary to clearly established federal constitutional law or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d). All factual determinations made by a state court are presumed to be correct; petitioner can rebut such presumption only by clear and convincing evidence. *Id.* § 2254(e). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, and is therefore entitled to the resumption of correctness. *Id.*; *Harrington v. Richter*, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011).

Here, the state court heard and adjudicated, on the merits, most of the claims petitioner presents in his federal habeas corpus petition. More specifically, the Texas Court of Criminals Appeals denied petitioner's application for state habeas relief without a written order. *In re Blevins*, WR-72,197-01; *Harrington v. Richter*, 131 S.Ct. at 784,. Petitioner's burden before this Court is significantly heightened in that petitioner cannot prevail even if he shows the state court's determination was incorrect. Petitioner must also show the state court unreasonably applied federal law or made an unreasonable determination of the facts. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002), *cert. denied, Neal v. Epps*, 537 U.S. 1104, 123 S.Ct. 963, 154 L.Ed.2d 772 (2003).

Petitioner has failed to meet this burden. Rather than explaining why the state court's determination was unreasonable, petitioner merely restates grounds similar to those he presented to the state court. He has not established the state court unreasonably applied federal law or made an unreasonable determination of the facts. *See id.* As detailed below, there is nothing in the record indicating the state court acted in a manner warranting federal habeas corpus relief.

IV.
MERITS OF PETITIONER'S ALLEGATIONS

A. PETITIONER'S CONFESSION

In his first ground of error, petitioner Blevins contends his confession, admitted against him at trial, was coerced and fabricated. Specifically, petitioner states, "[t]he confession was fabricated to match victim's [sic] statement. I did not give the statement of my free will. I was threatened." (Amended Habeas Corpus Petition, filed September 30, 2010, doc. 9 [hereinafter Petition], pg. 7). During the investigation, after the child made her outcry statement, petitioner confessed to having sexually assaulted the child in August 2005. The confession was typed by Texas Ranger Todd Snyder and signed by petitioner. (RR, vol. 3, pg. 101; State's Exhibit 3). Ranger Snyder testified at trial that he read to petitioner his *Miranda* rights. (*Id.*, pg. 98). Petitioner appeared to understand those rights and did not seek to invoke any of those rights. (*Id.*). Ranger Snyder testified he did not threaten or coerce petitioner into giving the statement. (*Id.*). The ranger did not videotape the confession, but he did conduct the entire interview in the presence of Kendra Hicks, a CPS investigator. (*Id.*, 97). Ms. Hicks testified she was present for the entire interview with Blevins. (Supplemental RR, vol. 1, pg. 28). She stated petitioner never indicated to Ranger Snyder that he wished to terminate the interview or that he no longer wanted to speak with the ranger. (*Id.*, pg. 31). Ms. Hicks stated,

> [t]o me it seemed more like a counseling session. Mr. Blevins was very relieved emotionally I could tell after the confession was made. I think this was something weighing heavy on him. He was tearful. He cried a lot. Ranger Snyder gave him some water. I mean, it wasn't anything I could sense that Mr. Blevins was scared or intimidated by any means.

(*Id.*).

Looking to the confession itself, the confession contains a statement of all of petitioner's *Miranda* rights. (RR, vol. 3, State's Exhibit 3, pg. 1). Each of those statements is initialed by petitioner. The confession is also signed by petitioner. (*Id.*, pg. 3). One of the first things set forth in the confession

is "[t]his statement is being given voluntarily, without fear of duress or threat." (*Id.*). Directly above petitioner's signature is the statement, "Ranger Snyder has typed this statement for me as I have told it to him in my own words. (*Id.*, pg. 3).

At trial, petitioner moved to suppress his confession. (CR, pg. 10). In his motion to suppress, petitioner averred, *inter alia*, his statements were involuntary, coerced, and enticed. (*Id.*). The trial court conducted a hearing on the motion to suppress at which both Ranger Snyder and Ms. Hicks testified. The trial court denied the motion, finding "there's no evidence that [the confession] was anything other than freely and voluntarily made and signed." (Supp. RR, pg. 37).

Initially, to the extent petitioner avers his confession was extracted in violation of his Fourth Amendment rights, such a claim is barred by *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). To the extent petitioner's claim is based upon rights beyond the Fourth Amendment, those claims would still fail. In order to obtain federal habeas corpus relief, a petitioner must present the federal court with clear and convincing evidence the state court's determination was incorrect. 28 U.S.C. § 2254(e). It is well-established that "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Thus, a viable habeas corpus argument is grounded upon evidence beyond a petitioner's own statements. *See id.*

In this case, the only indication petitioner's confession was coerced comes from petitioner himself, in his petition before the Court. There is absolutely no evidence of record indicating the confession was not freely given. To the contrary, the testimony offered during the hearing on the motion to suppress along with the confession itself all indicate the confession was voluntarily given and signed by petitioner. Petitioner's own statements before this Court are unsupported and unsupportable by

anything else contained in the record. *See Ross*, 694 F.2d at 1011. Those statements do not carry any probative evidentiary value and are inadequate to support petitioner's claims. *See id.*

Thus, petitioner has failed to present clear and convincing evidence that the state court was incorrect in its initial determination on the motion to suppress or that the state courts reviewing the record after the conviction erred in relying upon the trial court's determination. *See* 28 U.S.C. § 2254(d); *Harrington*, 131 S.Ct. at 784. Consequently, petitioner's first ground of error must fail.

B.
INEFFECTIVE ASSISTANCE OF COUNSEL

In his second ground of error, petitioner challenges his attorney's decision to not call two witnesses at trial. Evidence at trial indicated that during the August 2005 visit, petitioner and his wife spent the night in a tent outside of petitioner's mother's house, where petitioner was living at the time. (RR, vol. 3, pg. 114). Petitioner's confession indicates he went into the house between 10:00 p.m. and 12:00 a.m. the night of the assault, where he encountered and sexually assaulted his step-daughter. (RR, vol. 3, State's Exhibit 3, pg. 2). Petitioner now contends his attorney should have called Joyce Jones, who would have testified the victim was inside the house with her the entire night on the night of the assault. Petitioner also contends his attorney should have called Dorothy Jones, who would have testified the house was locked with petitioner's keys to the house inside the house.

The proper standard for judging a petitioner's contention he is entitled to relief on the ground his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Under the two-pronged *Strickland* standard, a petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687, 104 S.Ct. at 2064. An attorney's performance was deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id.*, 104 S.Ct. at 2064. That is, counsel's performance must have fallen below the

standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly differential, with a strong presumption counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065.

Additionally, a petitioner must show counsel's deficient performance prejudiced the defense. To establish this prong, a petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial. *Id.* at 687, 104 S.Ct. at 2064. Specifically, to prove prejudice a petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir.1993). "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

In this case, petitioner does not provide any statement from either Joyce Jones or Dorothy Jones indicating they were available and willing to testify on petitioner's behalf during the trial. Petitioner sets forth his version of what the witness's testimony would have been. As reviewed above, however, petitioner's statements standing alone have no probative evidentiary value. *See Ross*, 694 F.2d at 1011.

Additionally, had Joyce Jones testified at trial in a manner consistent with petitioner's

representations to this Court, such testimony would have been contradictory to the testimony of another witnesses who did testify at trial on petitioner's behalf. At trial, Stephanie Blake testified she had traveled with petitioner's then-wife to visit petitioner in August 2005. (RR, vol. 3, pg. 112). Ms. Blake stated the victim had been in the tent with her that night, and petitioner and his wife slept in a different tent. (*Id.*, pg. 114). She stated the victim had in fact been sleeping in the tent with her the entire night. (*Id.*, pg. 115). Therefore, any testimony from Joyce Jones that the victim spent the night with her in the house would have directly contradicted the testimony of Ms. Blake, who said the victim spent the night with her in the tent.

Petitioner has failed to establish either Joyce Jones or Dorothy Jones were available and willing to testify on petitioner's behalf. *See Day*, 566 F.3d at 538. He has not established what their testimony would have been nor has he shown how their testimony would have benefitted the defense. *See id.* In fact, the Court notes that at the state court level petitioner failed to even give the names of the witnesses he contends his attorney should have called. *See In re Bivens*, WR-72,197-02. Considering these failings, petitioner has not shown how the state court's determination was contrary to constitutional law or constituted an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Harrington*, 131 S.Ct. at 784. Petitioner's second ground of error is without merit.

## C. JURY MEMBERS

In his third ground of error, petitioner states he knew two members of the jury, who lied during voir dire about whether they knew the defendant. Specifically, petitioner states Jimmy Lax and Marla Lax, both of whom served on the jury, knew Blevins. The record indicates that during voir dire the prosecutor asked members of the venire panel whether they knew defendant. Neither Jimmy Lax nor Marla Lax indicated they knew defendant. (RR, vol. 2, pg. 58). Defendant was present at the voir dire proceedings; he fails to indicate why he did not at that time challenge the truthfulness of the Laxs'

representations. He now contends, however, that he went to school with the Laxs' daughter, that Jimmy Lax's father was petitioner's landlord for a period of years, and that Jimmy Lax's father preferred petitioner to Jimmy as a hand on the father's farm.

Petitioner provides no evidence, apart from his own statements, supporting his contention that the Laxs knew him or they were predisposed to render a verdict of guilt. Petitioner's statements alone are an insufficient basis for a viable habeas corpus claim. *See Ross*, 694 F.2d at 1011. For this reason alone, petitioner's third ground of error should be denied.

Additionally, however, it is well-settled that a members of the jury "need not . . . be totally ignorant of the facts and issues involved" in a case. *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975). It is not error for a juror to merely be familiar with the defendant. *Id.*, 421 U.S. at 801 n.4, 95 S.Ct. at 2036 n.4. If a potential juror had to be totally unacquainted with a defendant, the timely prosecution of persons who are well known in the community would be impossible. *Id.*, 95 S.Ct. at 2036 n.4. Therefore, even if both Laxs knew defendant there would still be no error in their service on the jury based only upon such knowledge. *See id.*, 95 S.Ct. at 2036 n.4. Moreover, petitioner never contends the Laxs were predisposed to render a guilty verdict at his trial and that they would have been unable to put aside such predisposition. Petitioner's third ground of error is without merit.

### D. SUFFICIENCY OF THE EVIDENCE

In his fourth point of error, petitioner contends there was no evidence or DNA linking petitioner to the sexual assault. In his fifth point of error, petitioner complains the victim had previously lied about being sexually assaulted by petitioner's mother. The Court liberally construes these argument as contentions that the evidence was factually and legally insufficient to support the conviction. In Texas, factual sufficiency of the evidence is only reviewable on direct appeal. *Coleman v. Quarterman*, 456

F.3d 537, 546 (5th Cir. 2006), *cert. denied*, 549 U.S. 1343, 127 S.Ct. 2030, 167 L.Ed.2d (2007). Such claims are not cognizable in state habeas proceedings and are therefore procedurally barred from federal habeas corpus review. *Id.*

For purposes of federal habeas corpus review, a state conviction need only satisfy the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To determine the legal sufficiency of the evidence, a federal court must consider whether, viewing all the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt." *Id.* at 318-19, 99 S.Ct. at 2789.

In making this determination, the reviewing court must resolve all credibility choices and conflicting inferences in favor of the fact finder. *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied*, 531 U.S. 822, 121 S.Ct. 65, 148 L.Ed.2d 31 (2000). It is the fact-finder's responsibility alone "to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. The reviewing court must determine if the evidence is constitutionally sufficient to support the conviction, i.e., whether the evidence satisfied the "substantive elements of the criminal offense as defined by state law." *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991).

In this case, the issue of whether the evidence in this case was factually sufficient is procedurally barred. *See Coleman*, 456 F.3d at 546. Regarding legal sufficiency, petitioner states the victim had once before alleged a sexual assault, perpetrated by petitioner's mother, and then recanted the allegation. Testimony at trial established the victim alleged petitioner's mother had inappropriately touched her. (RR, vol. 3, pg. 122). The victim later recanted her statement, indicating she had made the false allegation because she was angry at her mother for not protecting her from petitioner. (*Id.*). The jury

heard evidence of the victim's history of making a false allegation and nevertheless determined the victim's statement against petitioner was truthful. The determination of the victim's credibility was solely within the province of the jury, and this Court will not question that determination. *See Cyprian*, 197 F.3d at 740.

As far as evidence of petitioner's guilt is concerned, petitioner does not dispute that the victim was sexually assaulted. In fact, a nurse who examined the victim testified the child had, in fact, been physically and sexually assaulted. (RR, vol. 3, pg. 91). Rather, petitioner avers there was no evidence establishing he was the perpetrator of the assault. Petitioner's contention is incorrect. First, there was evidence at trial in the form of petitioner's own confession that he committed the crime. (RR, vol. 3, State's Exhibit 3). Second, there was evidence at trial from the victim herself, who gave explicit and unwavering testimony as to the sexual assault defendant committed against her. (RR, vol. 4, pg. 34). Finally, there was evidence in the form of testimony from the investigator and the nurse who interacted with the victim at the time of the outcry and from the clinical psychologist who interacted with victim three years after the outcry. Taken together, such testimony established that, over three years' time, the victim's story about how defendant sexually assaulted her never changed. (RR, vol. 3, pgs. 52-53, 86-87; RR, vol. 4, pg. 48). Petitioner is correct that there was no DNA evidence linking him to the assault. He is incorrect, however, in his apparent belief that DNA evidence is necessary to sustain a conviction. Viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of sexual assault of a child beyond a reasonable doubt. *Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2789. Petitioner has not shown how the state court's rejection of these arguments was contrary to constitutional law or constituted an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Harrington*, 131 S.Ct. at 784. Petitioner's fourth and fifth points of error are without merit.

V.
RECOMMENDATION

Petitioner has failed to present any meritorious claim warranting federal habeas corpus relief. Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner BRYAN THOMAS BLEVINS be DENIED.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 13th day of October, 2011.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

\* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).